W. A. WHITE, County Treasurer of Pike County, Missouri, Appellant, v. C. A. GREENLEE, Deputy Commissioner of Finance of Missouri in Charge of the Liquidation of THE PIKE COUNTY BANK of Bowling Green, Missouri.—49 S. W. (2d) 132.

Division Two, April 8, 1932.

*William F. Goodman* and *May & May* for appellant.

*Fry & Hollingsworth* and *Marion S. Francis* for respondent.

FITZSIMMONS, C.—The Circuit Court of Pike County denied to appellant, Treasurer of Pike County, the right of priority to a claim based on a deposit of county funds in the sum of $7,892.71, and the Treasurer appealed. The facts are undisputed. The special deputy commissioner in charge of the liquidation of the Pike County Bank allowed the claim of the County Treasurer in the amount stated and certified it to the circuit court for the determination of the question of priority under Section 5339, Revised Statutes 1929.

It was proved by the records that the county court received ten proposals of banks on May 6, 1929, in accordance with an order of April 8, 1929, dividing the county funds for depository purposes into ten parts of $15,000 each, and under a published notice. Among those proposing to act as a depository of county funds was the Pike County Bank, of Bowling Green, Missouri, which tendered a bid for one part of the funds. The court, by its order of May 6, 1929, selected the ten proposing banking corporations including the Pike County Bank "as depositories of the funds of Pike County, Missouri, on condition that each file its bond, as required by law, for the portion of said funds to be received by it under its bid, as hereinabove set forth, within ten days from this date." On the next day, May 7, 1929, the county court, by order of record, examined the bonds submitted to it by the ten banking corporations including the Pike County Bank, previously "selected as depositories as required by law." It found the bonds in due form and sufficient in amount and security. It accordingly approved the bonds and ordered them filed, and it designated each of the corporations, among them the Pike County Bank as a depository of the funds of Pike County, Missouri, from the 6th day of May, 1929, until the 6th day of May, 1931. The record discloses that the security given by the Pike County Bank, and approved and filed was a surety company bond for $10,000 and $8,000 in bonds "as security for county funds deposited in excess of $8,000."

The records of the county court show that, on May 22, 1930, a little over a year after the Pike County Bank had been designated a depository of county funds for a period of two years, the bank by one of its officers offered to the county court in lieu of the surety bond and the other bond originally given as security "a contract in the nature of a depository bond secured by collateral of par value of $22,000 which is by the court examined and approved." The order of the county court of May 22, 1930, then concludes: "And it is ordered, that the said bond be filed and that the bonds heretofore given by said Pike County Bank as such depository be surrendered to said bank, and sureties thereon are hereby discharged." The instrument, termed in the record a contract and bearing the caption "Depository Bond" is as follows:

"DEPOSITORY BOND.

"Whereas, the Pike County Bank of Bowling Green, Pike County, Missouri, has been selected as a depository of county funds by the County Court of Pike County, Missouri, for a period to terminate on the 6th day of May, 1931, and for a period to terminate sixty-five days after the May, 1931, Term of said county court, and

"Whereas, said bank qualified as such depository by giving a corporate surety bond for $10,000, and in addition thereto by the designation of certain bonds to secure any sums deposited with it as such depository in excess of $10,000, and

"Whereas, the corporate surety bond of said bank as such depository has expired, and it now desires to secure the entire deposits of county funds, deposited with it as such depository, by designation and setting apart of approved bonds.

"Now, therefore, the Pike County Bank aforesaid, to secure the funds of Pike County, Missouri, deposited with it as such county depository and to secure the faithful performance of all its duties and obligations as such depository, and the payment upon presentation of all checks drawn upon it as such depository, by the proper officers of Pike County, whenever any funds shall be in said depository sufficient for such payment, and the payment of all interest promptly, and the faithful keeping and accounting for all funds of the county deposited with it, according to law, agrees and does hereby set apart approved bonds and agrees to designate such bonds so set apart on its records, the right being reserved to change such bonds from time to time, subject, however, to the approval of the County Court of Pike County, Missouri.

"And at this time the aforesaid Pike County Bank designates and sets apart the following securities under the terms hereof:

"$8,000. Kansas Hotel Co., 1st 6% bonds, due 1932, Nos. 568 to 575 Inc.

"$4,000. United Railways of St. Louis, 1st General Mort. 4%, due July 1st. 1934. Nos. 3571-3419-4915 and 4916-Coupon.

"$6,000. Federal Public Service Corporation, 1st lien bond 6%, due 1947. Nos. 7556 and 7561 inclusive.

"$4,000. Mississippi County, Arkansas, drainage bonds, District No. 17, 5%, due 1936, Nos. 1110-1111-1112-1113.

"In testimony whereof, etc. . . . ."

The instrument was dated May 22, 1930, and was signed and sealed in the name of the Bank by its President. It also was certified by the county clerk as having been approved May 22, 1930, and ordered filed by the county court. It was recorded the same day in the Recorder's office.

Subsequent to the execution of the new bond, on May 22, 1930, and prior to the closing of the bank, the county treasurer made deposits in the bank at various times. These total subsequent deposits amounted to $2,472.62. The balance of the deposit account of the county treasurer in the Pike County Bank after the execution of the depository contract varied. On June 1, 1930, it was $14,327.08. The bank balance was reduced gradually and was $7,892.71 on November 22, 1930, the day that the bank closed its doors. A comparison of the total amount of deposits made after the new contract had been given and of the balances shows that a substantial sum was in the county treasurer's account when the original security was withdrawn and the sureties discharged, and that a large part of this substantial sum over and above the later deposits was in the bank when the Finance Commissioner took charge.

It was stipulated at the trial that the county treasurer made deposits in the Pike County Bank as a county depository designated by the county court, and that the funds in the hands of the Finance Commissioner in charge of the bank at the time of trial were sufficient to pay the claim of Pike County as a preferred claim. It was admitted that the State Finance Commissioner took over as assets of the bank the bonds described in the deposit contract, that he sold them for cash and held the proceeds as assets of the bank in liquidation.

The circuit court found that the claim of the county treasurer was not entitled to preference, and ordered it allowed as an ordinary or common claim. From this judgment claimant in due course appealed. The record does not disclose the theory on which the trial court reached the decision given. Upon petition of appellant, his appeal was advanced upon the docket.

■ I. Appellant contends that all county funds being required by law to be deposited in a county depository, the officers of the county charged with duties relating to the deposit of such funds for safe keeping are agents of limited powers, and as such they have no authority to deposit these public moneys with any other than a county depository; that a bank does not become a county depository merely by being designated as such in an order of the county court. It must qualify as a depository by giving the security prescribed by Section

140

12187, Revised Statutes 1929. Respondent on the other hand states his case thus: Where a depositary contract is entered into and recognized by both parties, and a valid bond given, even though the statutes are not strictly complied with, such contract is binding and the obligee is estopped to deny the contract; and upon the depositary becoming insolvent the obligee is not entitled to a preferred claim against its funds.

Article IX, Chapter 85, Revised Statutes 1929, compasses the statute law of county depositaries. Section 12184, Revised Statutes 1929, provides how a depositary shall be selected; Section 12185 states the procedure for bidders; Section 12186 relates to the opening of bids, and Section 12187 governs the bond of a depositary. The last named section prescribes that "within ten days after the selection of depositaries, it shall be the duty of each successful bidder to execute a bond payable to the county to be approved by the county court and filed in the office of the clerk thereof, with not less than five solvent sureties, who shall own unencumbered real estate in this State of as great value as the amount of said bond, or with a surety or trust company authorized by the laws of this State to execute bonds as surety." The statute also provides that "said bond shall be conditioned for the faithful performance of all the duties and obligations devolving by law upon said depositary and for the payment upon presentation of all checks drawn upon said depositary by the proper officers of said county or any township whenever any funds shall be in said depositary, and that all interest will be paid promptly, and that all said funds shall be faithfully kept and accounted for according to law."

A proviso of Section 12187, construed by this court in Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S. W. (2d) 751, authorizes the county court to accept in lieu of a statutory bond signed by five solvent sureties or by an authorized surety or trust company, bonds of the United States or of the State of Missouri "which said bonds shall be deposited as the court may direct."

We are of opinion that this case should be ruled by the principles thus stated in Huntsville Trust Co. v. Noel, 321 Mo. 749, 12 S. W. (2d) l. c. 754: "As heretofore stated, all county funds are required by law to be deposited in a county depository. The officers of the county charged with duties relating to the deposit of such funds for safe keeping are agents of limited powers, and as such they have no authority to deposit these public moneys with any other than a county depository. Now a bank or trust company does not become a county depository merely by being designated as such in an order of the county court; it must qualify as a depository by giving the security prescribed by Section 9585. ■ If, therefore, the trust company had not so qualified on June 27, 1927, the deposit of the county funds with it was unlawful; and it, in receiving such funds under

color of being a county depository, wrongfully obtained possession of them. The county moneys so obtained thereupon became, in the hands of the trust company, a trust fund by operation of law. These funds entered into, became commingled with, and to that extent augmented, the trust company's assets as a whole. Such assets may therefore be impressed with the trust to the extent of the funds so wrongfully obtained and commingled with them.'' [Authorities cited.]

██ The withdrawal and discharge of the depository bonds originally given and the substitution of the so-called depository bond set out above was more than mere irregularity. It was a proceeding by which the Pike County Bank, with co-operation of the county court, transformed itself from a qualified statutory depository of county funds into a depository wrongfully and unlawfully possessed of county funds including the moneys on hand at the time of the change and moneys of the county later deposited. The instrument called a depositary bond has no sureties, either personal or corporate, as provided by statute. It has not an obligor and an obligee, the essentials of all bonds whether statutory or otherwise. Indeed it does not purport to be a bond except in its caption. For by this instrument the Pike County Bank, in order ''to secure the faithful performance of all its duties and obligations as such depository,'' agreed to set apart certain specified mortgage bonds and to designate such bonds so set apart on its records, the right being reserved to change these bonds subject to the approval of the county court. These mortgage bonds were not bonds of the United States or of the State of Missouri, as the proviso of Section 12187, Revised Statutes 1929, limits the county court to accept as security. And even if they were government or state bonds the agreement of the bank to set them apart on its records would not have amounted to a compliance with the statute which authorizes the county court to accept such bonds as security to be deposited as the court might direct. The bank retained the bonds and the Finance Commissioner when he took charge treated them as assets of the bank. To deposit means to lodge for safe keeping or as a pledge, to intrust to the care of another.

Respondent finds support for his point of view in In re North Missouri Trust Company of Mexico, Mo., Fidelity & Deposit Co. of Maryland v. Cantley, Commissioner of Finance, etc. (Mo. App.), 39 S. W. (2d) 415. In that case a bank depository of the funds of a school district gave a surety company bond which the appellate court held to be in substantial compliance with the statute. The bank closed its doors having on deposit funds of the school district. The surety company paid to the school district the amount of its deposit and took an assignment of the claim against the bank. In the prosecution of the assigned claim the surety company asserted a preference upon the ground that there had been no advertisement

for bids and consequently no competitive bidding for the deposit of school funds by banking institutions. The Court of Appeals quite properly noted the incongruity of the action of the surety company in recognizing the force and validity of its depository bond by paying under it and taking an assignment of the claim of the school district and thereafter asserting a preference by denying the legality of the proceedings culminating in the execution of the bond. The principles of estoppel applied in the above case have no place here.

In the recent case of Harrison Township, Vernon County, et al. v. People's State Bank of Bronaugh, 329 Mo. 968, 46 S. W. (2d) 165, decided by the Supreme Court in Banc February 6, 1932, the cause was remanded with directions to the court below to enter a preferential judgment. In that case the bank which later failed while having on deposit township funds had not been selected as a depository by the township board and had not executed a depository bond. A pointed answer to the contentions of respondent here may be found in these words of WHITE, J., in the above cited case of Harrison Township, etc., v. Bank et al., 46 S. W. 165, l. c. 166: "It is argued that a constructive trust or a trust *ex maleficio* cannot arise in the absence of fraud, and respondent cites cases turning upon the *intention* of the parties at the time of the transaction. It would not matter what the intentions of the parties were when these deposits were made with the bank; Heitz was a public official charged with certain duties. He could not depart from the letter of the law governing his action by any good intention to create a different relation between himself or his district and the bank than that which the law creates. A constructive trust arises where trust property is received by a party knowing it is impressed with a trust, and that is this case."

In the public interest it should be ruled that a constructive trust arises at least as equitably in a case where, as here, a legally designated depository of county funds disqualifies itself during the statutory term of its contract as in a case in which the bank of deposit at no time had been designated and qualified in a manner provided by law. The contract of the Pike County Bank was to act as a depository of county funds for two years. The bank, at the time of its selection as a depository, gave a statutory bond to insure the performance of its obligations under the contract for the two-year period. This bond was a prerequisite to its legal designation and its continued status as a depository. The surrender of this bond during the term of the contract ended the status of the bank as a lawful depository unless the substituted bond was of like legal sufficiency. Another construction of the statute end of applicable principles of law would nullify the statute.

The judgment is reversed and the cause is remanded with directions to enter a new judgment giving a preference to the claim of appellant as prayed. *Cooley* and *Westhues, CC.,* concur.

PER CURIAM:—The foregoing opinion by FITZSIMMONS, C., is adopted as the opinion of the court. All of the judges concur, except *Ellison, J.,* not sitting.